## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,　　　　　) | |
| 　　　　　　　　　　　　　　　　　) | |
| 　　　　　　　　Plaintiff,　　　　) | **CRIMINAL ACTION** |
| 　　　　　　　　　　　　　　　　　) | |
| v.　　　　　　　　　　　　　　　) | **No. 13-20024-01-KHV** |
| 　　　　　　　　　　　　　　　　　) | |
| DANIEL LEE WADDELL,　　　　　　) | |
| 　　　　　　　　　　　　　　　　　) | |
| 　　　　　　　　Defendant.　　　　) | |
| _____) | |

### <u>MEMORANDUM AND ORDER</u>

This matter is before the court on defendant's <u>Motion For Consideration For Compassionate Release Pursuant To The First Step Act[,] 18 U.S.C. § 3582(c)(1)(A)(i)</u> (Doc. #39) filed May 21, 2021, which seeks release based on the Coronavirus Disease-2019 ("COVID-19") pandemic.  Pursuant to District of Kansas Standing Order No. 20-8, the Office of the Federal Public Defender notified the Court that it does not intend to enter an appearance to represent defendant.   For reasons stated below, the Court dismisses defendant's motion.

### <u>Factual Background</u>

On October 29, 2013, defendant pled guilty to bank robbery in violation of 18 U.S.C. § 2113(a) and (d) for the robbery of the Citizens Bank in Kincaid, Kansas.   In a companion case, D. Kan. No. 13-20108, defendant pled guilty to bank robbery in violation of 18 U.S.C. § 2113(a) and (d) for the robbery of the Corner Stone Bank in Lanagan, Missouri.   For purposes of sentencing, the Court grouped the two cases.   Defendant's total offense level was 30, with a criminal history category VI, resulting in a guideline range of 168 to 210 months in prison.   On February 19, 2014, in each case, the Court sentenced defendant to 210 months in prison, to be served concurrently with the same term of imprisonment in each companion case.   See <u>Judgment</u>

In A Criminal Case (Doc. #32).   On August 15, 2014, in two cases where defendant was on supervised release and based on defendant's convictions in the bank robbery cases, the Honorable Grey Kays of the United States District Court for the Western District of Missouri revoked his term of supervised release and sentenced him to 24 months in prison to be served consecutively to the 210-month term of imprisonment that this Court imposed.   See Judgment In A Criminal Case (Doc. #40) filed April 16, 2014 at 2 in United States v. Waddell, W.D. Mo. No. 07-5053-01 (24 months concurrent with sentence in W.D. Mo. No. 11-3076-01 but consecutive to sentences in D. Kan. Nos. 13-20108-01 and 13-20024-01); Judgment In A Criminal Case (Doc. #17) filed April 16, 2014 at 2 in United States v. Waddell, W.D. Mo. No. 11-3076-01 (24 months concurrent with sentence in W.D. Mo. No. 07-5053-01 but consecutive to sentences in D. Kan. Nos. 13-20108-01 and 13-20024-01).

Defendant currently is confined at USP Pollock, a Bureau of Prisons ("BOP") facility in Pollock, Louisiana.   USP Pollock houses 1,118 inmates.   See USP Pollock, https://www.bop.gov/locations/institutions/pol (last visited September 13, 2021).   As of September 13, 2021, 511 inmates and 147 staff members had tested positive for Coronavirus Disease-2019 COVID-19.   See COVID-19 Cases, https://www.bop.gov/coronavirus (last visited September 13, 2021).   One staff member died from COVID-19.   See id.   Some 507 inmates and 106 staff members have recovered.   See id.   In December of 2020, defendant tested positive for COVID-19.   In March of 2021, defendant received both doses of the COVID-19 Pfizer-BioNTech vaccine.

Defendant is 36 years old.   Defendant states that because he is a former smoker and has periodontal disease, he is at high risk of contracting COVID-19 and severe illness or death if he

contracts it or one of its variants.   With good time credit, defendant's projected release date is December 10, 2029.   Defendant asks the Court to grant compassionate release based on his health conditions, the disparity between his sentence and the sentence of his co-defendant, his young age when he committed the offense and his rehabilitation.   Because defendant must serve a 24-month term of imprisonment in the two supervised release cases, he also has filed a substantially identical motion for relief in the Western District of Missouri.   See United States v. Waddell, W.D. Mo. No. 11-3076, Doc. #19.   That motion remains pending.

## Analysis

A federal district court may modify a defendant's sentence only where Congress has expressly authorized it to do so.   See 18 U.S.C. § 3582(b)–(c); United States v. Blackwell, 81 F.3d 945, 947 (10th Cir. 1996).   Congress has set forth only three limited circumstances in which a court may modify a sentence: (1) upon motion of the BOP Director or defendant under Section 3582(c)(1)(A); (2) when "expressly permitted by statute or by Rule 35" of the Federal Rules of Criminal Procedure; and (3) when defendant has been sentenced "based on a sentencing range that has subsequently been lowered by the Sentencing Commission."   18 U.S.C. § 3582(c).

Under the First Step Act of 2018, Pub. L. No. 115-391 (S. 756), 132 Stat. 5194, after an inmate exhausts administrative remedies with the BOP, the Court may order compassionate release for "extraordinary and compelling reasons."   18 U.S.C. § 3582(c)(1)(A)(i).   The government argues that the Court should dismiss defendant's motion because he did not exhaust administrative remedies.

## I.    Exhaustion Of Administrative Remedies

The Court may entertain requests for compassionate release only upon a motion of the BOP

or of defendant after he submits a request to BOP and the earlier of (1) when he "fully exhaust[s] all administrative rights to appeal" or (2) "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility."   18 U.S.C. § 3582(c)(1)(A).   As to the second alternative, a "lapse" refers to the failure of the warden to respond to defendant's request.   See United States v. Maumau, 993 F.3d 821, 830 (10th Cir. 2021) (§ 3582(c)(1)(A) allows defendant to directly file motion for compassionate release with district court after either exhausting administrative remedies or "the passage of 30 days from the defendant's *unanswered* request to the warden for such relief") (emphasis added).[1]   In other words, if the warden responds to a request within 30 days, defendant must fully exhaust available administrative appeals before filing a motion in district court.[2]

The administrative exhaustion requirement in Section 3582(c)(1)(A) is jurisdictional.   See United States v. Salcido, 849 F. App'x 230, 231 (10th Cir. 2021) (failure to exhaust meant district

---

[1]     See also United States v. Abdeljawad, No. 15-CR-3394 WJ, 2020 WL 4016051, at *2 (D.N.M. July 16, 2020) (in context, "lapse of 30 days" refers to complete absence of response during that period); United States v. Gunn, 980 F.3d 1178, 1179 (7th Cir. 2020) (prisoner must first allow BOP to review request and make recommendation or show that BOP let 30 days pass "in silence"); *lapse*, Black's Law Dictionary 885 (7th ed. 1999) (lapse is "termination of a right or privilege because of a failure to exercise it within some time limit or because a contingency has occurred or not occurred").

[2]     See United States v. Otero, No. 1:11-CR-2672-WJ, 2021 WL 39682, at *2 (D.N.M. Jan. 5, 2021) (to exhaust remedies, prisoner must file administrative appeal of denial under 28 C.F.R. § 571.63); United States v. Valenzuela, No. 15-CR-01460-WJ, 2020 WL 5439803, at *2 (D.N.M. Sept. 10, 2020) (court lacks jurisdiction until inmate appeals warden denial through administrative appeal process and receives final agency determination).   But see United States v. Harris, 812 F. App'x 106, 107 (3d Cir. 2020) (statute allows defendant to file motion 30 days after warden receives request); United States v. Alam, 960 F.3d 831, 834 (6th Cir. 2020) ("Prisoners who seek compassionate release have the option to take their claim to federal court within 30 days, no matter the appeals available to them.").

court lacked jurisdiction to review defendant's request) (citing United States v. White, 765 F.3d 1240, 1250 (10th Cir. 2014)); United States v. Read-Forbes, 454 F. Supp. 3d 1113, 1116–17 (D. Kan. 2020) (exhaustion requirement jurisdictional based on "text, context, and relevant historical treatment" of Section 3582(c)) (quoting Musacchio v. United States, 136 S. Ct. 709, 717 (2016)).

Defendant alleges that on April 26, 2021, he submitted a request for compassionate release to BOP.   Motion For Consideration For Compassionate Release (Doc. #39) at 2.   The government states that BOP has no record of any such request.   Government's Response To Defendant's Motion For Compassionate Release (Doc. #45) filed June 28, 2021 at 4.   On July 22, 2021, defendant filed a reply, which includes a copy of his administrative request and a certified mail receipt dated April 27, 2021 for an envelope addressed to the warden.   Defendant's Response To Government's Response (Doc. #46), Exhibit.   Defendant states that the warden denied his request.   Id. at 1.   Defendant does not state the date that the warden denied his request.   Even so, the Court takes judicial notice of the warden's denial on May 14, 2021, which defendant filed in the Western District of Missouri.   See Motion For Consideration For Compassionate Release Pursuant To The First Step Act[,] Amended Section(s) 3582(c)(1)(A)(i) (Doc. #19) filed May 21, 2021 at 7 in W.D. Mo. No. 11-3076-01.   Because defendant has not shown that he appealed the warden's denial of his request, he has not fully exhausted all administrative appeal rights. Accordingly, the Court lacks jurisdiction to consider his motion for compassionate release.

Even if the Court construed the administrative exhaustion requirement of Section 3582(c)(1)(A) as a claims-processing rule rather than a jurisdictional limitation, the statutory rule would still bar defendant's motion at this time.   See United States v. Akers, 855 F. App'x 465, 466 (10th Cir. 2021); Read-Forbes, 454 F. Supp. 3d at 1117.   Whether the exhaustion

-5-

requirement is jurisdictional or a claims-processing rule, defendant must show that he "fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on his behalf." Akers, 855 F. App'x at 466 (quoting 18 U.S.C. § 3582(c)(1)(A)).   In contrast with judicially created exhaustion requirements, the Court lacks discretion to excuse defendant's failure to comply with a mandatory statutory requirement to exhaust administrative remedies.   Malouf v. SEC, 933 F.3d 1248, 1256 (10th Cir. 2019), cert. denied, 2020 WL 1124531 (U.S. Mar. 9, 2020); see Ross v. Blake, 136 S. Ct. 1850, 1857 (2016) (exhaustion statutes like Prison Litigation Reform Act of 1995 establish mandatory exhaustion regimes, foreclosing judicial discretion).   The COVID-19 pandemic is no exception.   See Alam, 960 F.3d at 831, 833–36 (enforcing mandatory exhaustion requirement despite seriousness of COVID-19 and its spread in prisons); United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) (despite COVID-19 pandemic, failure to exhaust presents "glaring roadblock" foreclosing compassionate release at this point).

Whether the exhaustion requirement is jurisdictional or a claims-processing rule, sound policy reasons support the requirement that defendant must first present to the BOP an appeal of the denial of his request for a reduced sentence.   The exhaustion requirement helps prevent premature claims and ensures that the agency that possesses the most expertise is given the first shot at resolving defendant's request.   See Forest Guardians v. U.S. Forest Serv., 641 F.3d 423, 431 (10th Cir. 2011); see also Raia, 954 F.3d at 597 ("Given BOP's shared desire for a safe and healthy prison environment, . . . strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance.").   Because defendant is in BOP custody, the BOP is in a better position to initially determine his medical needs, his specific risk of COVID-19, the risk to inmates generally at USP Pollock, the risk to the public if he is released and whether his release

-6-

plan is adequate.  See United States v. Epstein, No. CR 14-287-FLW, 2020 WL 1808616, at *4 (D.N.J. Apr. 9, 2020); see also Alam, 960 F.3d at 835 (preventing prisoners seeking relief because of COVID-19 from charging straight to federal court helps prison administrators prioritize most urgent claims and ensure that they can investigate gravity of conditions supporting compassionate release and likelihood that conditions will persist).  Likewise, the BOP is in a better position to coordinate any request for relief under Section 3582(c)(1)(A) with the exercise of its discretion to place a prisoner in home confinement under 18 U.S.C. § 3624(c)(2).

Because defendant did not fully exhaust his administrative remedies, the Court dismisses defendant's motion for compassionate release.[3]

## II.     Compassionate Release

Even if defendant had exhausted administrative remedies, he has not shown that compassionate release is warranted.  The Court may grant compassionate release if defendant establishes that (1) extraordinary and compelling reasons warrant a reduced sentence, (2) a

---

[3]        See Akers, 855 F. App'x at 466 (whether exhaustion jurisdictional or claims-processing rule, district court correctly dismissed compassionate release motion for failure to exhaust); see also Salcido, 849 F. App'x at 231–32 (vacating order "denying" compassionate release motion and remanding with instructions to "dismiss it for lack of jurisdiction" based on failure to exhaust).  Less than one month after Salcido was decided, the Tenth Circuit suggested in an unpublished opinion that the exhaustion requirement is not jurisdictional but rather a mandatory claims-processing rule.  See United States v. Watson, 851 F. App'x 136, 137 (10th Cir. 2021).  While Watson cites other circuit courts that have addressed the issue, it does not explain how those decisions can be reconciled with the reasoning of published Tenth Circuit authorities that treat the requirements of other subsections of Section 3582(c) as jurisdictional.  See United States v. C.D., 848 F.3d 1286, 1289 (10th Cir. 2017) (if defendant ineligible under Section 3582(c)(2), dismissal for lack of jurisdiction appropriate (citing United States v. White, 765 F.3d 1240, 1250 (10th Cir. 2014)); United States v. McGaughy, 670 F.3d 1149, 1158 (10th Cir. 2012) (Rule 35(a)'s 14-day time limit, which Section 3582(c)(1)(B) incorporates, is jurisdictional limitation; Section 3582(c) is "clear and mandatory restriction" on court authority).

reduced sentence is consistent with applicable Sentencing Commission policy statements and (3) the Section 3553(a) factors warrant a reduced sentence.  18 U.S.C. § 3582(c)(1)(A); Maumau, 993 F.3d at 831; United States v. McGee, 992 F.3d 1035, 1042–43 (10th Cir. 2021).  The Sentencing Commission has not issued an "applicable" policy statement for motions for compassionate release filed by defendants.  Maumau, 993 F.3d at 837; McGee, 992 F.3d at 1050.  Unless and until the Sentencing Commission issues such a policy statement, the second requirement does not apply.  See United States v. Warren, No. 11-20040-01-WPJ, 2021 WL 1575226, at *2 (D. Kan. Apr. 22, 2021); see also United States v. Jones, 980 F.3d 1098, 1111 (6th Cir. 2020) (where incarcerated person files motion, district court may skip step two of § 3582(c)(1)(A) inquiry and has full discretion to define "extraordinary and compelling" without consulting policy statement at U.S.S.G. § 1B1.13).  Accordingly, the Court evaluates only the first and third requirements.

A.    Extraordinary And Compelling Reasons For Release

The Court has discretion to independently determine whether defendant has shown "extraordinary and compelling reasons" that warrant release.  See McGee, 992 F.3d at 1044, 1048.  In the context of compassionate release, "extraordinary" means "exceptional to a very marked extent."  United States v. Baydoun, No. 16-20057, 2020 WL 4282189, at *2 (E.D. Mich. July 27, 2020) (quoting extraordinary, Webster's Third International Dictionary, Unabridged (2020)).  "Compelling" means "tending to convince . . . by forcefulness of evidence."  Id. (quoting compelling, Webster's Third International Dictionary, Unabridged (2020)).  The Court also considers how the Sentencing Commission has defined extraordinary and compelling reasons for BOP motions.  See United States v. Carr, No. 20-1152, 2021 WL 1400705, at *4 (10th Cir.

Apr. 14, 2021) (district court has discretion to consider definition of extraordinary and compelling reasons in Section 1B1.13 application notes).   For BOP motions, the Sentencing Commission has identified four reasons that may constitute grounds for compassionate release: (1) defendant's medical condition; (2) defendant's age; (3) defendant's family circumstances; and (4) a catchall category for an "extraordinary and compelling reason other than, or in combination with," the first three categories.   U.S.S.G. § 1B1.13, <u>Reduction In Term Of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement)</u>, cmt. n.1 (Nov. 2018).

Here, defendant seeks release primarily because of health conditions.   At age 36, however, defendant is young.   Defendant has periodontal disease which he states increases his risk of oral cancer, but he has not shown that periodontal disease affects his risk of contracting COVID-19 or suffering severe illness should he contract it.   Defendant states that he is a former smoker, which is a risk factor for COVID-19.   Even so, defendant has not shown that his health conditions, either individually or collectively, constitute extraordinary and compelling reasons for release of an inmate who has received a COVID-19 vaccine.

Defendant has not shown that compared to his proposed placement in the community, he faces a heightened or imminent risk of exposure to COVID-19 or one of its variants at USP Pollock.   <u>See</u> <u>United States v. Wright</u>, No. CR-TDC-17-0388, 2020 WL 2571198, at *3 (D. Md. May 21, 2020) (inmate must show imminent risk of exposure to COVID-19 and high risk for death or serious illness should he or she contract COVID-19 based on age, medical conditions or other factors).   COVID-19 certainly presents a challenge in the prison setting, where inmates generally live in close quarters.   Even so, the risk that COVID-19 or a variant that is resistant to the vaccine may emerge at USP Pollock cannot "justify compassionate release, especially considering BOP's

statutory role, and its extensive and professional efforts to curtail the virus's spread."   Raia, 954 F.3d at 597.

Defendant next argues that extraordinary and compelling reasons exist because of the disparity between his sentence of 210 months and the sentence of 24 months that his co-defendant, Stephen Hudson, received.   The Court imposed the two sentences based on the guideline ranges under the United States Sentencing Guidelines and the various factors under 18 U.S.C. § 3553. The guideline ranges reflect the relative culpability and criminal history of each defendant.   While defendant ultimately received a much higher sentence, he was significantly more involved in the attempted bank robberies and had a more significant criminal history than Hudson (Category VI compared to Category III).   Defendant essentially recruited Hudson to drive him to two different banks.   While Hudson waited in the car, defendant entered one of the banks, brandished a firearm and demanded money.   Presentence Investigation Report (Doc. #28) filed January 21, 2014, ¶ 12– 13.   Notably, defendant received a two-level enhancement because he was the organizer, leader, manager or supervisor of the criminal activity.   Id., ¶ 29.   Defendant also received a seven-level enhancement because he discharged a firearm numerous times at police officers when he was attempting to flee.   Id., ¶ 27.   Defendant has not shown that the disparity between his sentence and Hudson's sentence is an extraordinary and compelling reason for release.

Defendant next argues that his young age when he committed the offense and his rehabilitation constitute extraordinary and compelling reasons for release.   Defendant committed the instant offenses when he was 28 and 29.   Even so, he had already accumulated a significant criminal history which placed him in the highest category under the Guidelines.   While a defendant's post-conviction rehabilitation is a relevant factor at a resentencing, rehabilitation alone

is not an extraordinary and compelling reason for relief.   28 U.S.C. § 994(t) (while Sentencing Commission shall issue policy statements on what constitutes reasons for sentence reduction, "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."). Here, defendant's rehabilitation efforts combined with his age at the time of the offenses are not extraordinary and compelling reasons for relief.

      B.  <u>Section 3553(a) Factors</u>

      Even if defendant's medical conditions, the COVID-19 pandemic, the conditions at USP Pollock, the disparity between his sentence and the sentence of his co-defendant, his young age and rehabilitation efforts were considered "extraordinary and compelling" reasons for release, the Court would deny relief after considering the various factors under 18 U.S.C. § 3553.   A sentence of time served, or approximately 119 months including good time credit, is inconsistent with the seriousness of defendant's offense, the need for deterrence and the need to protect the public.   In particular, despite several prior convictions including battery, aggravated battery and two instances of being a felon in possession of a firearm and prison terms of 27 months, 51 months and 12 months and a day, defendant attempted to commit two separate bank robberies.   <u>Presentence Investigation Report</u> (Doc. #28), ¶¶ 60, 62, 64–65.   During the first robbery, defendant brandished a rifle.   <u>Id.</u>, ¶¶ 12, 34.   As he attempted to flee from law enforcement after a second attempted robbery, he fired a gun numerous times at officers.   <u>Id.</u>, ¶¶ 14–17, 22.   Finally, a reduction of defendant's sentence to approximately 119 months would reflect a significant disparity from his current sentence of 210 months, which was the high end of his guideline range of 168 to 210 months.

      The Court recognizes that defendant has completed slightly more than half of his sentence

and apparently has made some progress toward rehabilitation.   Even so, on balance, the factors under Section 3553(a) do not support a reduced sentence.   Accordingly, even if defendant had exhausted administrative remedies, the Court would deny relief.

**IT IS THEREFORE ORDERED** that defendant's <u>Motion For Consideration For Compassionate Release Pursuant To The First Step Act[,] 18 U.S.C. § 3582(c)(1)(A)(i)</u> (Doc. #39) filed May 21, 2021 is **DISMISSED**.

Dated this 13th day of September, 2021 at Kansas City, Kansas.

<u>s/ Kathryn H. Vratil</u>
KATHRYN H. VRATIL
United States District Judge